IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
IN NASHVILLE

| | | |
|---|---|---|
| TENNESSEE WALKING HORSE BREEDERS' AND EXHIBITORS' ASSOCIATION, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:05-0088 |
| v. | ) ) ) | Judge Campbell |
| NATIONAL WALKING HORSE ASSOCIATION, | ) ) ) ) | Magistrate Judge Knowles |
| Defendant. | ) ) | |

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT THEREOF

Comes now the Defendant, National Walking Horse Association (hereinafter "NWHA"), by and through counsel, and hereby respectfully submits this Response to the Motion for Partial Summary Judgment and Memorandum In Support thereof filed by Plaintiff, Tennessee Walking Horse Breeders' and Exhibitors' Association (hereinafter "TWHBEA").

The parties in this case have filed cross-motions for summary judgment. Both sought permission to file briefs in excess of the maximum number of pages allowed by the Court, and such permission was granted. In large part, NWHA's Memorandum of Law in Support of its Motion for Summary Judgment directly addresses the arguments raised in TWHBEA's Memorandum in Support of its Motion for Partial Summary Judgment. Rather than burden the Court with a mirror image of its previously filed Motion, Memorandum, and supporting documents and pleadings, NWHA adopts by reference herein the arguments contained in its

Memorandum[1], the Exhibits submitted in support of its Motion for Summary Judgment[2], and its Statement of Undisputed Material Facts[3] in accordance with Rule 10(c) of the Federal Rules of Civil Procedure. For reasons already submitted and supported, and for the additional reasons set forth below, TWHBEA's Motion for Partial Summary Judgment should be denied, NHWA's Motion for Summary Judgment should be granted, and this case should be dismissed with prejudice in its entirety.

## OVERVIEW

TWHBEA claims NHWA has "reaped what it has not sown" because it lists the pedigree of horses on registration certificates. There is no dispute in this case about whether NWHA obtains some of the information related to these pedigrees from TWHBEA certificates. It does. The questions are whether TWHBEA owns the Tennessee Walking Horse breed and whether it can assert a perpetual monopoly over the breed's lineage. The answers are "NO" and "NO".

In truth, NWHA is only one of a plethora of organizations built in one way or another around the "walking horse", a breed that earned the moniker based upon certain unique characteristics of conformation and gait.[4] It is not the only organization other than TWHBEA to establish a registry of walking horses,[5] nor is it the only organization to ever copy pedigree information from THWBEA registration certificates.[6] On the other hand, NWHA is the only organization THWBEA has sued for this practice.[7]

---

[1] Docket No. 31.
[2] Docket No. 30.
[3] Docket No. 32.
[4] Expert Review and Opinion of Wayne G. Hipsley, BSc., MSc., attached hereto as **Exhibit A** (hereafter "Hipsley Report") pp. 14-16; Deposition of Sharon Brandon, cited excerpts attached hereto as **Exhibit B** (hereafter "Brandon Dep.") 14:6-11-15:2.
[5] Hipsley Report pp. 17, 26-30, Brandon Dep. 30:22-31:1, 35:21-37:11, 45:11-46:23, 48:21-49:6, 51:3-52:3.
[6] Hipsley Report, pp. 31-38; Brandon Dep. 30:22-32, 35:21-37:21, 42:11-44:7, 45:11-47:4, 48:21-49:15, 51:3-53:1; Deposition of Charles L. Hulsey, cited excerpts attached hereto as **Exhibit C** (hereafter "Hulsey Dep.") 21:22-27:25, 29:5-24. TWHBEA itself borrowed from at least one existing registry in developing its own registry -- using the Arabian Stud Book as a form for the Walking Horse Stud Book as far as it fit TWHBEA's needs and

In fact, there are numerous organizations within the horse industry registering animals, and it is common practice for one organization to obtain pedigree information from existing registration certificates issued by other organizations.[8] The reason for the practice is simple – the lineage of an animal, in and of itself, consists of nothing more than facts in the public domain. As such, lineage information is available to all, and no organization – not even one as old and revered by its members as TWHBEA – can claim a monopoly – or a copyright – in lineage.

THWBEA incorrectly anticipated in its Memorandum that NWHA would argue this is a case about the despicable (and illegal) practice of soring horses. It is true that NHWA was founded by former THWBEA members in order to promote the "sound" (i.e. – not sored) walking horse. However, the copyright claim TWHBEA raises here turns only on whether it can warehouse factual information related to pedigree under the guise of a compilation protected by copyright law. Be that as it may, one may wonder why NHWA was singled out for copyright litigation while THWBEA stood consciously by as others copied (and still copy) pedigree information from THWBEA certificates for the purpose of issuing their own registration certificates.[9] Similarly, other organizations use TWHBEA's name and/or acronym on their own websites to describe the TWHBEA organization or its registration certificates,[10] but TWHBEA has not sued those organizations for trademark infringement or unfair competition. In light of TWHBEA's inaction with respect to others who have used TWHBEA's marks and registration certificates in the same way NWHA has used them, one might ask, why would Craig Evans,[11]

---

requirements. Minutes of the Executive Committee Meeting, November 30, 1937, attached as Exhibit C to NWHA's Motion, Docket No. 30.
[7] Brandon Dep., 39:23-40:9, 52:16-20, Hulsey Dep. 22:20-23:19, 25:17-22, 27:3-9, 35:20-24, 38:5-13, 59:10-13.
[8] Hipsley Report, pp. 31-38.
[9] Brandon Dep. 38:18-39:4, 52:21-53:1; Hulsey Dep., 22:20-23:9, 25:18-22, 27:3-8, 35:20-24, 59:10-13; May 12, 2006 Deposition of Jerrold Pedigo, cited excerpts attached hereto as **Exhibit D**, 38:12-40:4.
[10] Brandon Dep., 42:11-43:9, 45:11-25, 48:21-49:6, 51:3-52:3; Hulsey Dep., 22:6-19, 25:10-16, 26:18-27:2, 35:11-19.
[11] Brandon described Evans as TWHBEA's "administrative counsel". Brandon Dep., 17:6-11.

an attorney and TWHBEA's liason to the USDA, state at a presentation to the Walking Horse Owners Association that "we can't sit idly by while they [NWHA] continue to exist . . .?"[12] While the last question has no direct bearing on the legal issues discussed in these pleadings, it may be telling that Mr. Evans' statement came on almost the precise day the complaint in this case was filed.

## ARGUMENT

### A. TWHBEA's Copyright Claims

**1. Feist and the cases TWHBEA relies upon support NWHA's right to copy ancestral lineage of horses, without regard to the source.**

TWHBEA relies heavily on Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991) for the proposition that its compilation of walking horse pedigrees is subject to copyright protection. However, its reliance is misplaced.

Read as a whole, Feist clearly stands for the proposition that simply arranging names alphabetically does not give the "compiler" of those names copyright protection. In fact, names in and of themselves enjoy no copyright protection whatsoever. Copyright Office regulations make this crystal clear:

> § 202.1 Material not subject to copyright.
> The following are examples of works not subject to copyright . . .
> (a) Words and short phrases such as names . . . [or] coloring….

37 C.F.R. § 202.1 (Nov. 29, 2006).

Likewise, arranging ancestral lineage into the familiar "family tree" form is not the type of "selection, coordination, or arrangement" of data necessary to afford copyright protection to a compilation. It is well settled that copyright protection extends only to an author's expression of

---

[12] Deposition of Christy Parsons, p. 59, attached to NWHA's Motion, Docket No. 30, as Exhibit P.

4

Case 1:05-cv-00088    Document 42    Filed 12/05/2006    Page 4 of 14

facts and not to the facts themselves. Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 (5th Cir. 1981). As the Court in Miller pointed out, "it is the concept of originality that is the premise of copyright law." Id. at 309. THWBEA cannot seriously argue in this case that the arrangement of ancestral lineage into family tree form is original. So it relies on its designation of foundation stock using the letter "F" followed by a number, as well as its description for horse colors,[13] in an attempt to inject the element of "originality" missing from its compilation. However, as pointed out above, neither names nor colors are subject to copyright protection, and even if they were, the designation of TWHBEA's foundation stock, along with the names ascribed to such stock, passed into the public domain by operation of law many years ago.[14] From a policy standpoint, the rule against affording copyright protection to colors makes sense. Otherwise no person or organization could use color to describe a horse once TWHBEA has used that particular color in its registry.[15] In any event, NWHA chose the colors used to identify horses in its registry independently.[16]

Even though color is not subject to copyright protection and even though NHWA and TWHBEA use different color names to identify animals in each respective organization's registry, TWHBEA discovered that 7 out of 158 NWHA Registry Certificates listed TWHBEA designated colors, rather than NWHA colors. That means that in over 95% of cases, NWHA used its own colors. The TWHBEA colors were presumably copied from a TWHBEA certificate

---

[13] NWHA does not use the same colors for horses on its registration application as TWHBEA uses to identify Tennessee Walking Horses. Compare, e.g., NWHA Tracking Registry Application (which appears as Exhibit B to TWHBEA's Memorandum, Docket No. 29) with the colors described in TWHBEA's Official Guide to Color and Markings for Indentification of the Tennessee Walking Horse (relevant pages of which appear as part of Exhibit 8 to TWHBEA's Memorandum at TWH/NWH 6513-6520).
[14] This point was fully briefed in NWHA's Memorandum, Docket Number 31, at pp. 15-16.
[15] Surely, TWHBEA cannot seriously argue it "created" the colors it mentions specifically in its brief. "Sorrel", for example, is defined by Webster's Dictionary as "a light bright chestnut horse often with white mane and tail…" Webster's Ninth New Collegiate Dictionary 1126 (Merriam-Webster 1991). Likewise, "champagne" is defined by the same publication as "a pale orange yellow to light grayish yellowish brown". Id. at 225.
[16] Deposition of Debbie Nuding, cited excerpts attached hereto as **Exhibit E** (hereafter "Nuding Dep."), p. 27, lines 7-17.

5
Case 1:05-cv-00088    Document 42    Filed 12/05/2006    Page 5 of 14

at the same time pedigree information was being copied. If that is the case, then NWHA used its own colors on 151 NWHA Certificates issued using pedigree information from a TWHBEA registration Certificate. NWHA respectfully submits that the use of TWHBEA's colors in 7 cases was inadvertent and *de minimus*, unlike the defendant's conduct in Montgomery Co. Assoc. of Realtors, Inc. v. Realty Photo Master Corp., 878 F.Supp. 804 (D.Md. 1995), a case upon which the Plaintiff relies heavily in its brief, NWHA did not engage in wholesale copying of original elements of TWHBEA's registry subject to copyright protection.

TWHBEA relies on Montgomery Co. and argues the facts there are similar to the facts here. However, Montgomery Co. involved a realtor infringing the MLS listings of another realtor. The defendant used "puffery" created by the plaintiff, such as "elegant updated home, close to DC airport, gorgeous private back yard, lovely sunroom off LR" and copied what the Court described as a "unique and elaborate system of abbreviations in organizing its database." Id. at 810. NWHA respectfully submits that not only is Montgomery Co. distinguishable on the facts from this case, it was correctly decided and supports NWHA's position because it clearly shows the level of originality necessary to afford copyright protection to a compilation, which level is totally missing in TWHBEA's registry.

NWHA submits that Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1368 (5th Cir. 1981) more closely resembles this case. In Miller, a newspaper journalist covered a highly publicized kidnapping and later collaborated with the victim to write a book about the crime. Universal City Studios later produced a television movie about the crime using, without permission, many of the facts included in newspaper articles by the plaintiff and the book that he wrote. The author specifically rejected Universal's request for permission to copy the facts, and he later sued Universal for copyright infringement, claiming his research was subject to

copyright protection. In ruling in favor of Universal, the Fifth Circuit wrote "…[T]he labor involved in news gathering and distribution is not protected by copyright…" Id. at 1370, citing with approval International News Service v. Associated Press, 248 U.S. 215 (1918).

TWHBEA devotes a substantial portion of its brief to the time, money and expense it claims to have invested in developing and maintaining its registry. For purposes of these cross motions, NWHA does not challenge the numbers TWHBEA asserts. However, as mentioned in NWHA's Memorandum, the Supreme Court in Feist specifically rejected the "sweat of the brow" or "industrious collection" doctrines and cited Miller with approval. Feist at 352-61. Therefore, TWHBEA's investment in its registry is immaterial for purposes of the copyright issue before this Court.

### B. TWHBEA's Trademark and Related Claims

**1. TWHBEA concedes it has no evidence of actual confusion, and its "direct evidence" is nothing more than TWHBEA members who were upset because information related to their horses was available on NWHA's website without their knowledge or permission.**

The only "evidence" that TWHBEA offers of alleged confusion is three TWHBEA members – Kristin Chambers, Ronnie Blakely and David Wenger – who were upset that the pedigree of their horses appeared in NWHA's registry. Such "evidence of confusion" is insufficient to support TWHBEA's trademark and related claims.

There is a reasonable explanation for the appearance in the NWHA Registry of the pedigree for horses owned by Kristin Chambers, Ronnie Blakely and David Wenger. Debbie Nuding maintains NWHA's tracking registry that contains walking horse pedigrees in which TWHBEA claims to own a copyright interest.[17] In fact, Ms. Nuding helped create the tracking

---

[17] Nuding Dep., 6:17-19.

registry after she was asked by NWHA members to research software that could be used to start the registry. She looked for a ready-made package that would capture the information NWHA was interested in tracking.[18] This information included breeding, color, genetics, the inbreeding coefficients of the horses, show results, trail participation, or, as Ms. Nuding summed it up, "anything that would spotlight the horse's . . . accomplishments."[19]

Ms. Nuding never looked at TWHBEA or any other horse organizations as an example when she developed the NWHA tracking registry.[20] Rather, she discovered software called Breedmate sold by an Australian company known as Wild Systems.[21] The Breedmate software was designed primarily for cat and dog breeders, but it had a snap-in piece called Hawkeye that tracked horses, which NWHA purchased.[22] Ms. Nuding discovered that Hawkeye included sample databases, one of which was Tennessee Walking Horses.[23] The Tennessee Walking Horse sample database included records for approximately 1500 Tennessee Walking Horses.[24] Ms. Nuding used this sample database as a template for NWHA's tracking registry because it contained about "ninety-nine percent of the fields" NWHA wanted to include in its registry.[25] So the pedigrees for 1500 Tennessee Walking Horses included in Hawkeye became part of NWHA's registry from its inception.[26] Presumably, pedigrees for Kristin Chambers, Ronnie Blakely and David Wenger horses were included in the "canned software".

---

[18] Nuding Dep., 17:6-15.
[19] Nuding Dep., 18:5-9.
[20] Nuding Dep, 17:6-22.
[21] Nuding Dep., 17:4-5, 19:17-18.
[22] Nuding Dep., 20:2-4. TWHBEA refers in its brief to the Hawkeye package as "canned software". *See* TWHBEA Memorandum, Docket No. 29, at p. 10.
[23] Nuding Dep., 20:5-8.
[24] Nuding Dep., 20:8-10, 20:17-19.
[25] Nuding Dep., 21:12-18.
[26] Nuding Dep., 24:10-14.

THWBEA states that Chambers, Blakely and Wenger were "confused as to how their horses appeared on the NWHA Website without their permission."[27] This is simply not the type of "confusion" THWBEA must show in order to survive summary judgment on its trademark claims. As paragraph 72[28] of its Complaint suggests, TWHBEA must show that NWHA's <u>use of THWBEA's service and/or trademarks</u> "is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection or association" of NWHA's services *vis a vis* THWBEA's services, or "as to the origin of NWHA's services", or as to TWHBEA's "sponsorship or approval of" NWHA's "goods, services or commercial activities…"[29] Chambers, Blakely and Wenger's "confusion" had nothing to do with NWHA's fair use of TWHBEA's name and acronym on NWHA's website, which use simply identified one of the organizations from which NWHA would accept registration certificates when registering a horse in NWHA's own registry. Chambers, Blakely and Wenger's anger[30] is actually direct evidence that they knew NWHA and TWHBEA were separate organizations that were <u>unaffiliated</u>. Given that the ultimate test is whether there is a "likelihood of confusion" regarding the origin, sponsorship or affiliation of services offered by TWHBEA and NWHA, their knowledge (being sophisticated consumers) of the difference in the organizations actually cuts in favor of NWHA.[31]

---

[27] TWHBEA Memorandum, Docket No. 29, at 15.
[28] Paragraph 72 is limited to THWBEA's design mark, which NWHA submits it did not use as a matter of law. However, for purposes of this discussion, the legal statement of what NWHA would have had to have done to create an actual claim are correct.
[29] TWHBEA's Complaint, Docket No. 1, at ¶72.
[30] Hulsey Dep., 14:9-15, 52:11-18.
[31] It is interesting to note that Chambers, Blakely and Wenger all seem to assume they own their horses' registrations and pedigrees, else they wouldn't believe they had the right to complain about the information appearing on NWHA's website. TWHBEA does not address in its brief this obvious inconsistency with its position that IT owns the registrations and pedigrees.

## 2. Walking horse owners are sophisticated consumers likely to know the difference between TWHBEA and NWHA and that they are not related organizations.

TWHBEA states in its Memorandum that "consumers of both NWHA and TWBEA Registry goods and services are most likely sophisticated purchasers."[32] It then dismisses the sixth prong of the Frisch's Restaurants test[33] by stating the "sixth factor is not significant."[34] NWHA respectfully disagrees.

The ultimate issue is whether consumers are likely to be confused as to the source of competing goods and services. The purpose behind the Lanham Act itself is to protect the public's ability to differentiate between providers of goods and services.[35] It is difficult to conceive how the sophistication of walking horse owners would be insignificant when it comes to differentiating between THWBEA and NWHA. In fact, NWHA was formed by a group of former TWHBEA members who believed TWHBEA did not do enough to protect walking horses from the practice known as "soring".[36] Some of NWHA's organizers, like Don Bell and Ken DeHaven, had been actively involved in TWHBEA and were well known within TWHBEA.[37] Soring was a hot-button issue when NWHA was formed, and remains so today. It is highly unlikely that "sophisticated purchasers" of NWHA registry certificates would have been confused into thinking the actual source of the certificates was TWHBEA or, for that matter, that TWHBEA endorsed NWHA. In fact the reverse was true. TWHBEA members like

---

[32] TWHBEA Memorandum, Docket No. 29, at 16.
[33] Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642, 646 (6th Cir.), cert. denied, 459 U.S. 916 (1982).
[34] TWHBEA Memorandum, Docket No. 29, at 16.
[35] See 15 U.S.C. §1127.
[36] Deposition of Donald F. Bell, cited excerpts attached hereto as **Exhibit F**, 13:2-15:18, 20:11-14, 86:3-9, 175:1-15; Deposition of Ralph Kenneth DeHaven, cited excerpts attached hereto as **Exhibit G**, 11:9-12:4, 12:16-13:8.
[37] Ms. Brandon repeatedly referred to NWHA as "Mr. Bell's group." Brandon Dep., 73:13-19.

David Wenger knew the difference. Perhaps that explains why he referred to NWHA's registry as "that mutt registry".[38]

In a nutshell, because of the relatively small, sophisticated consumer group that was and is the owners of registered walking horses, purchasers of walking horse registration certificates are not likely to confuse a certificate issued by NWHA with one issued by TWHBEA. Nor are they likely to believe that TWHBEA endorses NWHA. Therefore, the sixth factor of the Frisch's Restaurant test definitely favors a ruling in NWHA's favor on the trademark and related claims.

### 3. NHWA did not "intend" to benefit from its use of TWHBEA's name or acronym on the NWHA website.

Any reasonable person viewing NWHA's website before December, 2005, physical copies of which are attached to the Complaint, would understand that NWHA used only so much of TWHBEA's name or acronym as needed to identify the registration certificates it would accept for purposes of obtaining pedigree information for an NWHA applicant horse. Such use falls squarely within the fair use doctrine as it is applied in a trademark context. Imagine a world where we could never use words in any type of commercial context once they become used to identify the source of goods or services. Pepsi would have to refer to Coca Cola in advertising as "the manufacturer and distributor of that other caramel colored soda in a red can with its headquarters in Atlanta".

The "intent" prong is leveled at those secondary users of service marks and trademarks whose use is intended to allow the secondary user to "piggyback" onto the goodwill of the senior user. In this case, NWHA did not intend to unfairly latch on to goodwill in TWHBEA's marks; it simply intended to identify one type of registration certificate it would accept for purposes of

---

[38] David Wenger's May 25, 2006 e-mail to Debbie Nuding, attached to NWHA's Motion for Summary Judgment, Docket No. 30, as Exhibit N.

obtaining the pedigree of an NWHA applicant horse. Not only was NWHA's use fair, it also made sense. The seventh prong of the Frisch's Restaurants test thus favors NWHA.

TWHBEA points out that NWHA removed the reference on its website to TWHBEA and added a disclaimer after this lawsuit was filed. However, evidence of the removal and disclaimer should not be considered by this court for any purpose in this litigation. THWBEA, among other things, sought injunctive relief in its Complaint. Removal of the TWHBEA references and adding the disclaimer did not hinder NWHA in its business, and it obviated the unnecessary expense of involving this Court with respect to injunctive relief. It could also be viewed as an attempt at settlement, which is another reason this Court should disregard the removal and disclaimer for any substantive purpose. (*See* Fed.R.Evid.408)

The truth is, TWHBEA never demanded that NWHA remove the TWHBEA name or acronym from its website before this lawsuit was filed. Learning of TWHBEA's objection only when it was served with a copy of the Complaint, NWHA removed the TWHBEA references and added a disclaimer. That does not change the correct legal conclusion that those references were protected by the doctrine of fair use.

### C. NWHA's Affirmative Defenses

1. **NWHA hereby withdraws its affirmative defenses based upon applicable statutes of limitations, laches and estoppel.**

The issues addressed in TWHBEA's brief on those affirmative defenses are thus moot.

## CONCLUSION

Based on the undisputed facts before the Court in this case, and for the reasons set forth above and in NWHA's Memorandum in Support of Summary Judgment, all of which are adopted by reference herein in accordance with Rule 10(c) of the Federal Rules of Civil Procedure, NWHA respectfully requests that this Court deny TWHBEA's Motion for Partial Summary Judgment, except with respect to those affirmative defenses NWHA has withdrawn, and enter summary judgment in NWHA's favor on all claims. NWHA further prays that this Court grant it such additional relief to which it may be entitled, including costs and attorneys fees incurred in defense of TWHBEA's claims.

Respectfully submitted,

**ORTALE, KELLEY, HERBERT & CRAWFORD**

By: /s/ Thomas C. Corts
Thomas C. Corts (BPR No. 3486)
Deron H. Brown (BPR No. 20662)
ORTALE, KELLEY, HERBERT & CRAWFORD
Third Floor, Noel Place
200 Fourth Avenue North
Nashville, TN 37219
(615) 256-9999
(615) 726-3261 – fax
tcorts@ortalekelley.com
dbrown@ortalekelley.com
*Attorneys for Defendant*

**JACK, LYON & JONES, P.A.**

By: /s/ Bruce H. Phillips
Bruce H. Phillips (BPR No. 16499)
JACK, LYON & JONES, P.A.
11 Music Circle South, Ste. 202
Nashville, TN 37203
(615) 259-4664
(615) 259-4668 - fax
brucep@jljnash.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing has been served via ECF, on this 5th day of December 2006, on the following:

Stephen J. Zralke, Esq.
Natalya L. Rose, Esq.
Bone McAllester Norton, PLLC
511 Union Street, Suite 1600
Nashville, TN 37219

/s/ Bruce H. Phillips
Bruce H. Phillips, Esq.