IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

TENNESSEE WALKING HORSE    )
BREEDERS' AND EXHIBITORS'    )
ASSOCIATION    )
    )
v.    )    No. 1:05-0088
    )    JUDGE CAMPBELL
NATIONAL WALKING HORSE    )
ASSOCIATION    )

<u>MEMORANDUM</u>

Pending before the Court is Plaintiff's Motion for Partial Summary Judgment (Docket No. 24) and Motion for Summary Judgment of Defendant, National Walking Horse Association (Docket No. 30). For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment (Docket No. 24) is GRANTED in part, DENIED in part and MOOT in part. Defendant's Motion for Summary Judgment (Docket No. 30) is DENIED.

Also pending before the Court is National Walking Horse Association's Motion for Oral Argument on its Motion for Summary Judgment (Docket No. 27). The Motion (Docket No. 27) is DENIED.

FACTS

Plaintiff, Tennessee Walking Horse Breeders' and Exhibitors' Association ("TWHBEA"), has filed its Complaint (Docket No.1) against Defendant, National Walking Horse Association ("NWHA"), alleging copyright infringement in violation of 17 U.S.C. §101, <u>et</u> <u>seq</u>. (the "Copyright Act"), trademark infringement in violation of §1114(a) of the Lanham Act, 15 U.S.C §1051, <u>et</u> <u>seq</u>. (the "Lanham Act"), unfair competition in violation of §1125(a) of the Lanham Act, trademark dilution in violation of §1125(c) of the Lanham Act, unfair competition in violation of §47-18-104 of the Tennessee Consumer Protection Act, Tenn. Code

Ann. §47-18-101, et seq. ("TCPA"), and the common law torts of unfair competition and intentional interference with business relations.

In 1935, TWHBEA, or its predecessor the Tennessee Walking Horse Breeders Association of America, created and established a registry (the "Registry") to record the pedigrees of the Tennessee Walking Horse (Docket No. 43 at 1). The Registry contains over 70 years' worth of unbroken ancestral lineage records for Tennessee Walking Horses (Docket No. 43 at 1). TWHBEA maintains in its possession the pedigree of every horse registered with it since 1935, and keeps these pedigrees in two fireproof vaults (Docket No. 43 at 1). Every single horse that is registered with the TWHBEA has a registration certificate ("Registry Certificate") on file with the TWHBEA showing an unbroken chain since TWHBEA's founding in 1935 (Docket No. 43 at 2). As of November 13, 2006, TWHBEA had approximately 430,000 horses in its Registry, giving it a market share of 98% of the registered Tennessee Walking Horses (Docket No. 43 at 2). TWHBEA issues Registry Certificates based upon a horse's satisfaction of selection criteria, including establishment that a horse is a pure-breed Tennessee Walking Horse (Docket No. 43 at 2).

The original Constitution and Bylaws of the TWHBEA adopted in 1935 set forth rules that govern eligibility for registration in the TWHBEA Registry (Docket No. 43 at 2). In 1938 TWHBEA, or its predecessor, published a 239 page book entitled The Register of the Tennessee Walking Horse Breeders' Association of America (the "1938 Registry") (Docket No. 39 at 2). The 1938 Registry included specific criteria for inclusion, including specific color markings on the legs, body, head, mane and tail (Docket No. 43 at 2). The 1938 Registry included a copyright notice showing 1938 as the date of first publication and the TWHBEA as the copyright

2

claimant (Docket No. 39 at 3). The 1938 Registry included information on the lineage of certain horses, in both chart form and prose (Docket No. 39 at 3).

Over time, TWHBEA's selection criteria have evolved (Docket No. 43 at 2). For example, in 1974 TWHBEA researched and discussed the use of photographs of the horses' night eyes, or chestnuts, for purposes of positive identification and included the photographs in its application for registration (Docket No. 43 at 2). TWHBEA's chart of colors and markings from 1999 includes some different color selections from the 1990 chart, and the 2006 chart includes different colors from the 1999 chart (Docket No. 43 at 3).

TWHBEA has registered its copyright in the present TWHBEA Registry with the United States Copyright Office (Docket No. 43 at 3 and Docket No. 1 at Ex. A). TWHBEA's copyright notice has appeared on its Applications for Registration continuously since 1979, TWHBEA's copyright notice has appeared in it rule books continuously since before 1994, and TWHBEA's copyright appears on its Registry Certificates (Docket No. 43 at 3 and Docket No. 33, Ex. 2).

In addition, since June, 1974, TWHBEA has continuously and exclusively used the service-mark TENNESSEE WALKING HORSE BREEDERS' AND EXHIBITORS' ASSOCIATION in interstate commerce, in connection with maintenance of the TWHBEA Registry, sporting events, and competitions for the Tennessee Walking Horse, and informational services, printed materials and publications in the field of the Tennessee Walking Horse (Docket No. 43 at 3). Since May 30, 1992, TWHBEA has continuously and exclusively used the service-mark TWHBEA in interstate commerce in connection with maintenance of the TWHBEA Registry, sporting events and competitions for the Tennessee Walking Horse, and informational services, printed materials and publications in the field of the Tennessee Walking Horse (Docket

3

No. 43 at 4). Since May, 1992, TWHBEA has continuously and exclusively used the service-mark TWHBEA and Design (horse's head in a circle)(the "Design Mark") in interstate commerce, in connection with maintenance of the TWHBEA Registry, sporting events and competitions for the Tennessee Walking Horse, and informational services, printed material and publications used in the field of the Tennessee Walking Horse (Docket No. 43 at 4). Since July, 2002, TWHBEA has continuously and exclusively used the service-marks (a) TENNESSEE WALKING HORSE BREEDERS' AND EXHIBITORS' ASSOCIATION (b) TWHBEA, and (c) the TWHBEA Design Mark (the "TWHBEA Marks") in interstate commerce in connection with on-line informational services, computerized communications services and on-line retail store services in the field of the Tennessee Walking Horse (Docket No. 43 at 4). The United States Patent and Trademark Office issued registration of the TWHBEA Design Mark, in connection with the maintenance of the TWHBEA Registry, on January 31, 1995 (Docket No. 43 at 5). In 1998, NWHA was established to promote the sound, natural gaited horse and eliminate the practice of soring (Docket No. 39 at 4). NWHA established a registry that provides ancestral lineage information of the Tennessee Walking Horse (the "NWHA Registry") and from which the NWHA issues certificates of pedigree and ownership registration for Tennessee Walking Horses (Docket No. 43 at 5). NWHA launched the NWHA Registry on its website in approximately July, 2004 (Docket No. 43 at 5).

When founded, the NWHA did not possess a database of pedigrees of the Tennessee Walking Horse (Docket No. 43 at 5). From July, 2004 through December 25, 2005, NWHA's website stated that it accepted TWHBEA registration certificates from applicants seeking to register a horse with the NWHA Registry (Docket No. 43 at 6 and Docket No. 39 at 5). From

4

July, 2004 through December 25, 2005, the NWHA website stated:

> A. " NWHA is now accepting Tennessee Walking Horse Breeders and Exhibitors Association (TWHBEA) ... registered Walking Horses with current registration papers for registration with NWHA."

> B. "Blood typing and parentage verification on horses that are currently registered with TWHBEA ... will be accepted."

> C. "A code will be added to every horse that is registered with NWHA that will denote how each horse entered the registry. (Example: TWHBEA horses will carry the letter "T")."

> D. "Be sure to send copies of both sides of TWHBEA ... registration certificates with application to register with NWHA."

> E. "Copies of TWHBEA or CRTWH registration papers MUST accompany registration."

(Docket No. 43 at 6).

It is undisputed that NWHA's application for registration contains no space to list a horse's pedigree (Docket No. 43 at 7). It is also undisputed that the sole source from which NWHA obtains a horse's pedigree is from TWHBEA's Registry Certificates, the Canadian Registry of the Tennessee Walking Horse ("CRTWH") or from canned software that NWHA purchased for $100.00 (Docket No. 43 at 7 and Docket No. 39 at 5). While it is undisputed that NWHA accepts TWHBEA Registry Certificates, it is disputed whether NWHA limits its use of the information contained in the Registry Certificates to the factual ancestral lineage contained therein (Docket No. 39 at 5-6). For instance, it is undisputed that the NWHA Registry has copied and denoted unique designations that TWHBEA has historically assigned to its horses, such as "F-38", which designates a horse that was the 38th foundation horse in the TWHBEA Registry (Docket No. 43 at 8). In addition, TWHBEA registered Tennessee Walking Horse

5

"After Glo's" NWHA application lists these markings: "blaze lower lip, sock left hind leg, fetlock right hind leg," and "After Glo's" TWHBEA Registry Certificate states: "Near hind sock, off hind fetlock, lower lip, blaze." It is not the information from "After Glo's" NWHA application that was used by NWHA for the horse's registration certificate, but rather it is the information from "After Glow's" TWHBEA's Registry Certificate that was used by NWHA (Docket No. 43 at 8). Furthermore, TWHBEA registered Tennessee Walking Horse "Son's Suede Karma's" NWHA application listed these markings: "Bald face, sock, mix flax," and its TWHBEA registry certificate listed these markings: "Four stockings, bald, flax mane, white tail." Similarly, it is the information from the TWHBEA Registry Certificate for "Son's Suede Karma" that appeared on the registration certificate issued by NWHA for Son's Suede Karma (Docket No. 43 at 8). Whether the information copied is protected intellectual property of TWHBEA or merely unprotected facts is central to the dispute between the parties (Docket No. 39 at 8-9).     The parties are also at odds over NWHA's use of TWHBEA's Marks. TWHBEA asserts that NWHA has used TWHBEA's Marks and NWHA denies that it has used TWHBEA's Design Mark (Docket No. 43 at 7 and Docket No. 39 at 6). It is undisputed that from July, 2004 through December 25, 2005, NWHA's Website included no disclaimer explaining that TWHBEA did not endorse or condone NWHA's use of TWHBEA's Marks (Docket No. 43 at 7). It is also undisputed that NWHA never asked TWHBEA for permission to use TWHBEA Marks and that TWHBEA never sent a cease and desist letter to NWHA regarding its use of the acronym TWHBEA (Docket No. 43 at 7 and Docket No. 39 at 11). On approximately December 26, 2005, NWHA removed all references to TWHBEA from its website and added a disclaimer (Docket No. 43 at 7).

6

It is also undisputed that NWHA's founding directors were also sitting directors of TWHBEA and that approximately all NWHA board members are current or former members of TWHBEA. (Docket No. 43 at 9).

TWHBEA has filed a Motion for Summary Judgment (Docket No. 24) requesting summary judgment on its claims of trademark infringement under the Lanham Act, on its claims of unfair competition in violation of the Lanham Act, federal common law and the TCPA, and on its claims of copyright infringement in violation of the Copyright Act. TWHBEA also requests summary judgment on all of the affirmative defenses raised by NWHA in its Answer (Docket No. 8), but does not seek summary judgment on its claim of intentional interference with business relations under Tennessee law or trademark dilution under the Lanham Act. In addition, TWHBEA requests permanent injunctive relief against NWHA.

NWHA has also filed a Motion for Summary Judgment (Docket No. 30) requesting summary judgment on TWHBEA's claim for copyright infringement under the Copyright Act on the grounds that TWHBEA cannot demonstrate that it holds the copyright in the pedigree of the "Tennessee Walking Horse" or its registry, and, alternatively, on the grounds that TWHBEA's Registry is a compilation of facts not subject to copyright protection. In addition, NWHA requests summary judgment on TWHBEA's claims for trademark infringement and unfair competition in violation of the Lanham Act, the TCPA and common law on the grounds that TWHBEA did not establish trademark rights in the acronym "TWHBEA" prior to filing this case, and TWHBEA cannot show that NWHA's use of the acronym TWHBEA is likely to cause confusion. Alternatively, NWHA argues that its use of the acronym "TWHBEA" on its website represented fair use. Furthermore, NWHA argues that TWHBEA's claims for trademark dilution

7

in violation of the Lanham Act must be dismissed as a matter of law because TWHBEA cannot show that NWHA's use of the acronym "TWHBEA" caused actual confusion. Finally, NWHA argues that TWHBEA's state law claim for intentional interference with business relations must fail because TWHBEA cannot establish the required elements of its claim.

## SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Id.; Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. Meyers, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Hopson, 306 F.3d at 432.

## ANALYSIS

1. Copyright Infringement

TWHBEA has filed a motion for summary judgment on its copyright infringement claim under the Copyright Act. TWHBEA asserts that NWHA has infringed its copyright in the TWHBEA Registry by copying information directly from TWHBEA Registry Certificates.

8

TWHBEA acknowledges that the TWHBEA Registry is a compilation of facts, but asserts that it is a copyrightable compilation as a work formed by the collection and assembling of preexisting material and data that is selected, coordinated and arranged in such a way so that the resulting work as a whole constitutes an original work of authorship. More specifically TWHBEA claims that the selection and arrangement of the information in its Registry is original despite employing a family tree diagram, as it has exercised creativity in deciding what to include from the choice about which horses to include (and their ancestors), to the designation for foundation horses, and the specific colors and markings, which have evolved over time. TWHBEA argues that the very act of beginning to compile the pedigree and lineage of the Tennessee Walking Horse in 1935 and then continuing to do so today is, by itself, the heart of TWHBEA's original selection. TWHBEA further asserts that the Registry Certificates contain unique colors and combinations, markings, identifiers and abbreviations. In making its case of infringement, TWHBEA asserts that NWHA has copied not only the pedigrees included on the Registry Certificates, but also specific notations and abbreviations that TWHBEA has created.

In response to TWHBEA's assertions and also in support of its own motions, NWHA argues that the pedigree of the Tennessee Walking Horse is nothing more than facts which are not subject to copyright protection. More specifically, NWHA argues that arranging ancestral lineage into the familiar "family tree" is not the type of "selection, coordination, or arrangement" of data necessary to afford copyright protection to a compilation and that TWHBEA cannot, as a matter of law, claim ownership of facts of ancestral lineage of the breed of horses known as the Tennessee Walking Horse. In addition, NWHA argues that neither the designation of foundation stock nor the description for horse colors are sufficiently original to warrant copyright

9

protection.  NWHA further argues that even if they are, the designation of TWHBEA's

foundation stock by using the letter "F" followed by a number, along with the names ascribed to

such stock, passed into the public domain by operation of law many years ago.  Finally, NWHA

argues that over 95% of the registry certificates it issues use NWHA colors rather than

TWHBEA colors, and, therefore, any use by NWHA of TWHBEA's colors is de minimis.

In order to prove copyright infringement under the Copyright Act, TWHBEA must show

that it owned a valid copyright, and that NWHA copied original elements of its copyrighted

work.  Montgomery County Ass'n. of Realtors, Inc. v. Realty Photo Master Corp., 878 F. Supp.

804, 809 (D. Md. 1995).  "A certificate of copyright registration constitutes prima facie evidence

of the validity of the certificate and the facts stated in the certificate."  Id. (citing M. Kramer

Mfg. Co. v. Andrews, 783 F. 2d 421, 434 (4th Cir. 1986)).  "If a plaintiff possesses a copyright

registration certificate, 'the only evidence required of the plaintiff to establish prima facie

ownership ... is evidence of plaintiff's chain of title from the original copyright registrant.'"  Id. at

809-810 (quoting 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright, §13.01[A]

(1993)).  Once TWHBEA carries its burden, the burden then shifts to NWHA to overcome the

presumption of a valid copyright.  Id. at 810.

In the present case, there appears to be no dispute that TWHBEA holds a valid copyright

in the Registry and Registry Certificates (Docket No 43 at 3).  Thus, the inquiry becomes

whether TWHBEA has proved the second element of its case, namely did NWHA copy original

elements of its copyrighted work.

Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 111 S. Ct. 1282,

113 L. Ed. 2d 358 (1991) is the leading case on whether a compilation possesses enough

originality to warrant copyright protection.  In <u>Feist</u>, the Supreme Court held that originality is a constitutional requirement and the touchstone of copyright protection.  <u>Feist</u>, 111 S. Ct. at 1285. In <u>Feist</u>, the Supreme Court further held that "a compilation is not copyrightable *per se*, but is copyrightable only if its facts have been 'selected, coordinated, or arranged *in such a way* that the resulting work as a whole constitutes an original work of authorship.'"<u>Id.</u> (quoting 17 U.S.C. §101 (emphasis added)).   Furthermore, "even a compilation that is copyrightable receives only limited protection for the copyright does not extend to facts contained in the compilation." (quoting 17 U.S.C. §103(b) (emphasis added)).  In <u>Feist</u>, the Supreme Court found that while the plaintiff had a valid copyright in its telephone directory as a whole, there was nothing original in its white pages.  <u>Id</u>.  In so finding, the Supreme Court determined that the raw data comprising the white pages were uncopyrightable facts, and that the way in which plaintiff selected, coordinated, and arranged those facts was not original in any way.  <u>Id</u>.

In another copyright case involving the alleged infringement of a compilation, an associations' copyright in a registry of massage therapists, the District Court for the Northern District of Illinois held, "choices as to which facts to include, the order of placement, and how to arrange the data so they may be used effectively by readers are sufficiently original that Congress may protect such compilations through the copyright laws so long as the choices are made independently by the compiler and entail a minimal degree of creativity."  <u>American Massage Therapy Assoc. v. Maxwell Petersen Ass'n., Inc.</u>, 209 F. Supp. 2d 941, 948 (N.D. Ill. 2002).  In <u>American Massage Therapy</u>, the District Court found that the selection of information in plaintiff's registry was sufficiently creative to be eligible for copyright protection, but also found that the copyright would not extend to the underlying facts in the registry, the names and

11

addresses of the therapists therein, holding that raw facts may be copied at will. Id. at 948.

Similarly, in another copyright infringement case involving the copying of facts in an MLS

database, the District Court for the District of Maryland held that, "if the compilation author

clothes facts with an original collocation of words, he or she may be able to claim a copyright in

this written expression." Montgomery County Ass'n,, 878 F. Supp. at 810 (quoting Feist, 111 S.

Ct. at 1289). "As a result, '[o]thers may copy the underlying facts from the publication, but not

the precise words used to present them.'" Id. In Montgomery County, the District Court found

that the subject MLS database possessed at least some minimal degree of creativity in that it

contained marketing puffery that could not be characterized as factual, and an elaborate system

of abbreviations in organizing its database. Id. Further, the District Court found that the fact

that each MLS property report contained some purely factual information relating to a home did

not negate the original presentation and arrangement of the information in the database. Id.

　　　　In the present case, the Court finds that TWHBEA has demonstrated that the Registry and

Registry Certificates possess the requisite level of originality in the selection and originality of

material included therein to entitle the Registry and Registry Certificates to copyright protection.

More specifically, the undisputed facts show that TWHBEA has exercised creativity and has

adopted unique and creative selection criteria in deciding which horses to include in its Registry,

including the choices about what horses are pure bred Tennessee Walking Horses, the

designation for foundation horses, and specific colors and markings of the Tennessee Walking

Horse, all of which have evolved over time (Docket No. 43 at 1-3). While the underlying facts

regarding a particular horse or its lineage may not be subject to copyright protection, it is the

way in which the facts have been expressed, selected and coordinated by TWHBEA in the

Registry and Registry Certificates as a whole work of authorship that is original and subject to the protection of TWHBEA's copyright.

Having determined that the Registry and Registry Certificates are sufficiently original to warrant copyright protection, the Court must next determine whether NWHA has copied any of the original elements of the Registry and/or Registry Certificates. In the present case, the Court finds that the record before it shows that NWHA did not use independent selection criteria for inclusion of a horse in its NWHA Registry or that it simply copied raw facts about a horse's ancestry from TWHBEA Registry Certificates. Rather, the Court finds that the undisputed facts show that NWHA has solicited TWHBEA Registry Certificates from applicants and copied almost verbatim from TWHBEA Registry Certificates (Docket No. 33, Ex. 2 and Docket No. 43 at 8). As such, the Court finds that NWHA has infringed TWHBEA's copyright in its Registry and Registry Certificates in that each of TWHBEA's copyrighted Registry Certificates bears a portion of the copyrighted Registry.

NWHA argues that any such copying is de minimis in that the undisputed proof shows that only 7 out of 158 NWHA Registry Certificates list TWHBEA designated colors, rather than NWHA colors. "To establish that a copyright infringement is *de minimis*, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" Gordon v. Nextel Communications and Mullen Advertising, Inc., 345 F. 3d 922, 924 (2003). The Court finds that NWHA's copying of TWHBEA's protected material is not de minimis in that the undisputed facts show that NWHA has copied almost verbatim from TWHBEA Registry Certificates (Docket No. 33, Ex. 2). The extent of copying, of course, also

13

goes to the issue of damages.

Finally, with respect to NWHA's argument that the designation of TWHBEA's foundation stock, along with the names ascribed to such stock, passed into the public domain by operation of law many years ago, the Court finds that TWHBEA is not asserting a copyright in the facts contained in the Registry, such as the ancestral lineage of the Tennessee Walking Horse or names, markings or colors of horses, and has made no claim with respect to TWHBEA's first printed publication of its registry. Rather, TWHBEA's asserted copyright is in the selection, coordination and arrangement of ideas in its current Registry as a whole and as an original work of authorship.

Accordingly, TWHBEA's Motion for Summary Judgment (Docket No. 24) on its copyright infringement claim under the Copyright Act against NWHA is GRANTED, and NWHA's motion for summary judgment on TWHBEA's claim for copyright infringement under the Copyright Act is DENIED. At the pretrial conference set for February 16, 2007, the parties shall be prepared to discuss the terms of a permanent injunction and bond, as well as any unresolved copyright issues, such as damages. The pretrial conference set for February 16, 2007 at 1:00 p.m. is hereby moved to Nashville, rather than Columbia.

2. Trademark Infringement

In support of its Motion for Summary Judgment (Docket No. 24), TWHBEA asserts that NWHA has infringed its trademark in violation of §1114 of the Lanham by openly encouraging the public for a period of seventeen months to submit TWHBEA Registry Certificates when applying for NWHA Registry Certificates. In response to TWHBEA's allegations and in support of its own Motion (Docket No. 30), NWHA argues that there is no evidence of actual confusion

14

in the marketplace from NWHA's use of TWHBEA's name on its website, and that walking

horse owners are sophisticated consumers likely to know the difference between the TWHBEA

and the NWHA.  In addition, NWHA asserts that it did not intend to benefit from its use of

TWHBEA's name or acronym on its website and that its use of TWHBEA's acronym on its

website constitutes fair use.   NWHA has also filed its own Motion for Summary Judgment

(Docket No. 30) on TWHBEA's claims of trademark infringement under the Lanham Act

asserting the additional argument that TWHBEA has no federal trademark protection in the

acronym TWHBEA.

Section 1114 of the Lanham Act provides:

Any person who shall, without the consent of the registrant —

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a
registered mark in connection with the sale, offering for sale, distribution, or advertising
of any goods or services on or in connection with which such use is likely to cause
confusion or to cause mistake, or to deceive ..., shall be liable in a civil action by the
registrant for the remedies hereinafter provided.

15 U.S.C. §1114.

"The touchstone of liability under §1114 is whether the defendant's use of the disputed

mark is likely to cause confusion among consumers regarding the origin of the goods offered by

the parties." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F. 3d

275, 280 (6th Cir. 1997).  The Sixth Circuit has identified the following factors to consider when

determining whether actual confusion exists: 1) strength of the senior mark; 2) relatedness of the

goods or services; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing

channels used; 6) likely degree of purchaser care; 7) the intent of defendant in selecting the

mark; and 8) likelihood of expansion of the product lines.  Id.  See also, Frisch's Restaurants,

15

Inc. v. Elby's Big Boy, Inc. of Steubenville, 670 F. 2d 642, 648 (6th Cir. 1982).

      "'The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due.'" Daddy's Junky Music, 109 F. 3d at 280 (quoting Frisch's Restaurants, 759 F. 2d at 1264). In the present case, there appears to be no real dispute that TWHBEA satisfies the first factor. As noted above, since June, 1974, TWHBEA has continuously and exclusively used the service-mark TENNESSEE WALKING HORSE BREEDERS' AND EXHIBITORS' ASSOCIATION in interstate commerce, in connection with maintenance of the TWHBEA Registry, sporting events, and competitions for the Tennessee Walking Horse, and informational services, printed materials and publications in the field of the Tennessee Walking Horse (Docket No. 43 at 3). Since May 30, 1992, TWHBEA has continuously and exclusively used the service-mark TWHBEA in interstate commerce in connection with maintenance of the TWHBEA Registry, sporting events and competitions for the Tennessee Walking Horse, and informational services, printed materials and publications in the field of the Tennessee Walking Horse (Docket No. 43 at 4). Since May, 1992, TWHBEA has continuously and exclusively used the service-mark TWHBEA and Design Mark in interstate commerce, in connection with maintenance of the TWHBEA Registry, sporting events and competitions for the Tennessee Walking Horse, and informational services, printed material and publications in the field of the Tennessee Walking Horse (Docket No. 43 at 4). Since July, 2002, TWHBEA has continuously and exclusively used TWHBEA MARKS in interstate commerce in connection with on-line informational services, computerized communications services and on-line retail store services in the field of the Tennessee Walking Horse (Docket

No. 43 at 4). The United States Patent and Trademark Office issued registration of the TWHBEA Design Mark, in connection with the maintenance of the TWHBEA Registry on January 31, 1995 (Docket No. 43 at 5).

There also appears to be no dispute over the relatedness of goods and services. The undisputed facts show that both TWHBEA and the NWHA have established a registry that provides ancestral lineage information of the Tennessee Walking Horse and issue certificates of pedigree and ownership for the Tennessee Walking Horse (Docket No. 43 at 1-2, 4-5).

With respect to the third factor, similarity of marks is a significant factor in determining whether there is a likelihood of confusion. Id. at 283. In the present case, NWHA does not deny that it uses TWHBEA Marks on its website (Docket No. 43 at 6). Rather, in support of its own Motion for Summary Judgment, NWHA asserts that TWHBEA has no Federal trademark protection in the acronym "TWHBEA" under §1114(1) of the Lanham Act. More specifically, NWHA argues that TWHBEA did not have a registered trademark for the acronym "TWHBEA" prior to filing this lawsuit. In addition, NWHA argues that because TWHBEA did not apply for registration for the acronym "TWHBEA" prior to filing of this case and failed to object to the use of the "TWHBEA" acronym on the NWHA website, TWHBEA's Federal trademark infringement claim must be dismissed as a matter of law.

In response to NWHA's assertions, TWHBEA argues that there is not just "similarity of the marks," the word elements of the marks are identical. More specifically, TWHBEA asserts that the undisputed facts show that TWHBEA's Design Mark incorporates the acronym "TWHBEA." The Court finds the third factor weighs in favor of TWHBEA regarding the similarity of the marks.

17

Next, the Court must evaluate whether there is evidence of actual confusion. Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion, but a lack thereof is rarely significant. Id. at 284. With respect to this fourth factor, TWHBEA admits that it does not have evidence of actual confusion, but asserts that there is direct evidence of confusion over possible affiliation or approval by TWHBEA regarding the NWHA. To support its position, TWHBEA argues that at least three consumers, Kristin Chambers ("Chambers"), Ronnie Blakely ("Blakely") and David Wenger ("Wenger"), were confused as to how their horses appeared on the NWHA website without their permission. The NWHA discounts TWHBEA's argument as merely evidence of TWHBEA members who were upset because information related to their horses was available on NWHA's website without their knowledge or permission, and that the information likely came from "canned software" used by NWHA to establish their database. Furthermore, NWHA argues that even if Chambers, Blakely and Wenger were confused as to how their horses' pedigrees appeared on the NWHA website without their permission, that this confusion is not the type of confusion required to establish evidence of actual confusion.

The Court finds that questions of fact also remain as to the fourth factor of whether there is evidence of actual confusion. For instance, the Court finds that the Declaration of Blakely indicates that he had been under the impression that his horse "What's Up Tiger Lily" had been entered in NWHA's online pedigree registry based upon receipt of the horse's pedigree from TWHBEA (Docket No. 41, Ex. G). While Blakely's Declaration certainly evidences confusion as to how NWHA obtained the information used in its database, it falls short of definitively establishing whether his confusion extended to actual confusion as to TWHBEA's endorsement or sponsorship of NWHA's Registry or merely evidenced irritation that information about the

18

horse had been disseminated without permission.

With respect to the fifth factor, the Court must consider the similarities or differences between the predominant customers of the parties' respective goods or services and the marketing approaches employed by each party. Id. at 285. In the present case, TWHBEA asserts that NWHA is reaching out to the same consumers as TWHBEA. NWHA does not dispute this assertion and the undisputed facts show that many NWHA members continue to register their horses with TWHBEA even after NWHA launched its own registry (Docket No. 43 at 9). Accordingly, the Court finds that this fifth factor also weighs in favor of TWHBEA.

Next, the Court must look at the likely degree of purchaser care. The degree of care with which consumers likely purchase goods or services is usually measured against the typical buyer exercising ordinary caution. Id. A finding of enhanced purchaser care is proper when the buyer has expertise or is more sophisticated. Id. "The ultimate significance of a given degree of care, however, often will depend upon its relationship with the other seven factors." Id. In the present case, TWHBEA concedes that consumers of both NWHA and TWHBEA Registry goods and services are most likely sophisticated purchasers, but further asserts that this factor is not relevant in relation to the other seven factors. In response to TWHBEA's assertions and on behalf of its own summary judgment motion, NWHA argues that Tennessee Walking Horse owners are sophisticated consumers likely to know that the TWHBEA and the NWHA are not related. Given the parties' apparent agreement that purchasers of TWHBEA and NWHA's goods and services are sophisticated purchasers, the Court finds that this factor weighs in favor of NWHA. The Court does not agree with TWHBEA that the degree of purchaser care is not significant, but finds that its significance must be weighed in relation to the other seven factors.

<u>See</u>, <u>Id</u>.

The seventh factor to be considered by the Court is NWHA's intent in using TWHBEA's mark. "If a party chooses a mark with the intent of causing confusion that fact alone may be sufficient to justify an inference of confusing similarity." <u>Id</u>. at 286 (internal quotations and citations omitted). "Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." <u>Id</u>. at 286 (citing <u>Little Caesar Enters., Inc. v. Pizza Caesar, Inc.</u>, 834 F. 2d 568, 572 (6th Cir. 1987)). TWHBEA argues that NWHA intended to benefit from TWHBEA's Marks when it referred to them for 17 months on NWHA's website and invited the public to submit their TWHBEA certificates when applying with the NWHA. TWHBEA further argues that NWHA's intent to benefit from TWHBEA's marks also is shown by the fact that twelve of the sixteen NWHA founding directors were also sitting directors of TWHBEA, almost all of NWHA's board members are current or former members of TWHBEA, and NWHA members continue to apply for registration with TWHBEA despite the alternative NWHA   In response to TWHBEA's assertions, NWHA argues that any reasonable person viewing NWHA's website would understand that NWHA used only so much of TWHBEA's name or acronym as needed to identify the registration certificates it would accept for purposes of obtaining pedigree information for an NWHA applicant horse. Thus, NWHA argues that its use of the TWHBEA mark falls squarely within the fair use doctrine as it is applied in the trademark context.

"'Under the doctrine of 'fair use', the holder of a trademark *cannot* prevent others from using the work that forms the trademark in its primary or descriptive sense." <u>Bliss Clearing</u>

20

Niagara, Inc. v. Midwest Brake Bond Co., 339 F. Supp. 2d 944 (W.D. Mich. 2004) (quoting

Herman Miller, Inc. v. Palazzetti Import & Exports, Inc., 270 F. 3d 298, 319 (6th Cir. 2001)). The

fair use doctrine as applied in the trademark context permits "others to use a protected mark to

describe aspects of their own goods." ETW Corp. v. Jireh Publishing, Inc., 332 F. 3d 915, 920

(6th Cir. 2003) (internal quotations and citations omitted). "In evaluating a defendant's fair use

defense, a court must consider whether defendant has used the mark: (1) to describe their own

goods; (2) in its descriptive sense; and (3) in good faith." Id. "In what is often referred to as

nominative fair use, a defendant uses the plaintiff's mark to describe the plaintiff's product

rather than its own. Bliss Clearing Niagara, 339 F. Supp. at 963 (citing New Kids on the Block

v. News Am. Publishing, Inc., 971 F. 2d 302 (9th Cir. 1992)).

    In the present case, it is undisputed that NWHA's website stated that it accepted

TWHBEA registration certificates from applicants seeking to register a horse with NWHA's

Registry and instructed applicants to send their TWHBEA registration certificates with their

application to register (Docket No. 43 at 6). It is also undisputed that the source from which

NWHA obtains a horse's pedigree is from either a registration certificate from the TWHBEA,

the CRTWH or from canned software (Docket No. 43 at 7 and Docket No. 39 at 5). The Court

finds that from the facts before it at this time, it is unable to determine whether NWHA's use of

TWHBEA's mark was with the intent of causing confusion and promoting its own interest, or

simply for the good faith purpose of describing its registration process. The Court acknowledges

that certain identification uses of TWHBEA's mark may be in "good faith," but given the factual

disputes about the intentions of NWHA and is alleged animosity toward TWHBEA, the issue of

"good faith" is for trial. Accordingly, the Court finds that questions of fact remain whether

NWHA used TWHBEA's Mark to induce consumers into believing that possible affiliation with or approval by TWHBEA regarding NWHA's Registry existed, or whether NWHA used TWHBEA's Marks in good faith to describe the type of information it would accept in order to register a horse.

Finally, the eighth factor to be considered by the Court in determining actual confusion is likelihood of expansion of the product lines. In the present case, there appears to be no dispute between that parties that this factor has been established. TWHBEA asserts that there is a strong possibility that either TWHBEA or NWHA will continue to expand its reach to compete with the other or be marketed to the same consumers, and NWHA does dispute these assertions. Accordingly, the Court finds that this eighth factor, the likelihood of expansion of the product line, weighs in favor of TWHBEA.

In conclusion, the Court has found that the first, second, third, fifth and eighth factors weigh in favor of TWHBEA, and the sixth factor weighs in favor of NWHA. The Court has also found that material questions of fact remain with respect to the fourth factor (evidence of actual confusion), the seventh factor (the intent of NWHA in selecting the mark), and with respect to NWHA's fair use defense. The Court finds that given these questions of fact, summary judgment on TWHBEA's claim for trademark infringement under the Lanham Act is inappropriate at this time. Accordingly, TWHBEA's Motion for Summary Judgment (Docket No. 24) on its claim of Trademark Infringement under the Lanham Act is DENIED. Similarly, NWHA's Motion for Summary Judgment (Docket No. 30) on TWHBEA's claim for trademark infringement under the Lanham Act is DENIED.

22

3.  Unfair Competition Claims

TWHBEA has also filed a motion for summary judgment (Docket No. 24) on its unfair competition claims under §1125(a) of the Lanham Act, Federal common law and the TCPA. Similarly, NWHA has filed its own motion for summary judgment (Docket No. 30) on these claims.  Like TWHBEA's claim for trademark infringement under the Lanham Act, each of these causes of actions requires proof of likelihood of confusion.  Daddy's Junky Music, 109 F. 3d at 288; Frisch's Restaurants, Inc., 670 F. 2d at 647; McDonald's Corp, v. Shop at Home, Inc., 82 F. Supp. 2d 801, 816-817 (M.D. Tenn. 2000).  Given the Court's earlier determination that questions of fact remain with respect to the likelihood of confusion caused by NWHA's use of TWHBEA's mark, TWHBEA's Motion for Summary Judgment (Docket No. 24) and NWHA's Motion for Summary Judgment (Docket No. 30) on these claims are both DENIED.

4.  Trademark Dilution

NWHA has filed a motion for summary judgment (Docket No. 30) on TWHBEA's claim for trademark dilution under §1125(c) of the Lanham Act asserting that TWHBEA cannot show that NWHA's use of the acronym "TWHBEA" caused actual dilution of its registered mark. More specifically, NWHA alleges that there is no evidence that NWHA used TWHBEA's registered logo.  In addition, NWHA asserts that because TWHBEA never registered its acronym "TWHBEA" prior to filing this suit, there is no "senior mark" in the form of the acronym "TWHBEA" that NWHA could have diluted.  Furthermore, NWHA alleges that even if it were to concede the acronym "TWHBEA" is a famous and distinctive trademark, there exists no mark of NWHA that is the same or similar to that alleged by TWHBEA.  TWHBEA responds to NWHA's assertions by arguing that this case is one of the "obvious" cases where actual dilution

23

is shown automatically because NWHA copied the TWHBEA mark verbatim. More specifically, TWHBEA asserts that TWHBEA's registered Design Mark incorporates both the acronym "TWHBEA" and the horses head design. In addition, TWHBEA asserts that even though TWHBEA has not registered its marks "TWHBEA" and "Tennessee Walking Horse Breeders' and Exhibitors' Association," it has used its marks continuously in interstate commerce since 1974.

The Sixth Circuit has held that in order to establish a prima facie case of trademark dilution the senior mark must be: (1) famous; and (2) distinctive, and the junior mark must: (3) be in commerce; (4) have begun subsequent to the senior mark becoming famous; and (5) cause dilution of the distinctive mark. Kellogg Co. v. Toucan Golf, Inc., 337 F. 3d 616, 628 (6th Cir. 2003). In Mosely v. V Secret Catalogue, Inc., 537 U.S. 418, 123 S. Ct. 1115, 155 L. Ed. 2d 1 (2003) the Supreme Court recognized that proof of dilution under §1125(c) requires a showing of actual dilution. V Secret, 123 S. Ct. At 1117. The Supreme Court also held that proof of actual dilution may be difficult to obtain, and noted that circumstantial evidence can be used to show actual dilution under certain circumstances, such as the obvious case when the marks are identical. V Secret, 123 S. Ct. at 1125  Fair use of a famous mark by another to identify competing goods of the owner of the trademark is recognized as an exception to the anti-dilution provision of the Lanham Act. 15 U.S.C. §1125 (c)(3)(A).  See also, Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc., 2006 WL 1153354 at *14 (S.D.N.Y May 1, 2006).

 In the present case, the Court finds that the relevant inquiry is not as NWHA asserts, whether any mark of NWHA is the same or similar to that alleged by TWHBEA, but rather whether NWHA's alleged use of TWHBEA's Marks caused dilution of the alleged distinctive

24

quality of TWHBEA's Marks.  V Secret, 123 S. Ct. at 1117.   The Court finds that questions of fact remain whether NWHA's use of the acronym "TWHBEA" caused actual dilution of TWHBEA's Design Mark.  Also, the Court finds that questions of fact remain with respect to NWHA's asserted fair use of TWHBEA's acronym "TWHBEA."  Accordingly, the Court declines to grant summary judgment to NWHA on TWHBEA's claim of trademark dilution under the Lanham Act.  Thus, NWHA's Motion for Summary Judgment (Docket No. 30) on TWHBEA's claim for trademark dilution in violation of the Lanham Act is DENIED.

5.  Intentional Interference With Business Relations

NWHA has also filed a Motion for Summary Judgment (Docket No. 30) on TWHBEA's claim for intentional interference with business relations under Tennessee law arguing that TWHBEA cannot establish the requisite elements to prove its prima facie case.  In response to NWHA's motion, TWHBEA asserts that the record contains evidence of its prima facie case precluding summary judgment on NWHA's motion.

Under Tennessee law, in order to establish a prima facie case of intentional interference with business relations, a plaintiff must show: 1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; 2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; 3) the defendant's intent to cause the breach or termination of the business relationship; 4) the defendant's improper motive or improper means; and 5) damages resulting from the tortious interference.  Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W. 3d 691, 701 (Tenn. 2002).

In the present case, while it is undisputed that NWHA was established in 1998 to

promote the sound, natural gaited horse and eliminate the practice of soring (Docket No. 39 at 4), it is also undisputed that NWHA's founding directors were also sitting directors of TWHBEA and that approximately all NWHA board members are current or former members of TWHBEA. (Docket No. 43 at 9). Furthermore, the evidence shows that former NWHA charter member and board member, Mark L. Matson ("Matson"), testified that some members and directors of NWHA had a vendetta against TWHBEA, and established NWHA's pedigree registry in an effort to harm TWHBEA (Docket No. 41, Ex. 10). In addition, the Court has found that questions of fact remain with respect to NWHA's good faith in its use of TWHBEA's trademark. Therefore, at a minimum, the Court finds that questions of fact remain with respect to NWHA's intent and motive to preclude summary judgment on TWHBEA's claim for intentional interference with business relations. Accordingly, NWHA's motion for summary judgment (Docket No. 30) on TWHBEA's claim for intentional interference with business relations is DENIED.

6. Affirmative Defenses

NWHA has withdrawn its affirmative defenses based upon the applicable statutes of limitations, laches and estoppel (Docket No. 42 at 1). Therefore, TWHBEA's motion for summary judgment (Docket No. 24) on these affirmative defenses is moot.

IT IS SO ORDERED.


TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE